IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTOINETTE SUCHENKO, <br><br> Plaintiff, <br><br> v. <br><br> ECCO USA, INC., <br><br> Defendant. | Civil Action No. <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Antoinette Suchenko, by and through undersigned counsel, seeks a permanent injunction requiring a change in ECCO USA, Inc.'s ("Defendant" or "ECCO") corporate policies to cause its websites to become, and remain, accessible to individuals with visual disabilities. In support thereof, Plaintiff respectfully asserts as follows:

## INTRODUCTION

Equal opportunity for the disadvantaged—so far as practicable—has been a major goal of the United States since World War II. This case deals with one aspect of that struggle—providing the visually impaired with an effective opportunity to use the internet for procuring consumer products…The blind, like the deaf, can, demonstrations during the present litigation have shown, achieve high internet communication skills if they are trained and have appropriate cooperation from merchants in providing the proper technology and software.

*Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *1 (E.D.N.Y. Dec. 21, 2017) (J. Weinstein).

1. Antoinette Suchenko has been legally blind since undergoing retina surgery more than 20 years ago. Today, she uses a screen reader to navigate the Internet.

2. Screen reader "software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Id*. at *6. Specifically,

> The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard.

*Id*. at *6-7.

3.   ECCO "sells a range of footwear covering dress, casual, performance, running and golf categories for men, women and children…Today, ECCO products are sold in 87 countries at 2,989 ECCO shops and shop-in-shops and a total of 15,000 sales points around the world."[1]

4.   ECCO sells its shoes online at its website, www.us.shop.ecco.com ("Website").

5.   ECCO owns, operates, and controls the Website and is responsible for the policies, practices, and procedures concerning its development and maintenance.

6.   Unfortunately, ECCO denies approximately 7 million[2] Americans who are visually impaired access to its Website's goods, content, and services because the Website is largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

---

[1] *See* https://www.facebook.com/pg/eccousa/about/?ref=page_internal (last accessed March 22, 2018)

[2] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed March 22, 2018).

7. Plaintiff brings this civil rights action against ECCO to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

8. By failing to make its Website available in a manner compatible with computer screen reader programs, ECCO, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

9. Because ECCO's Website has never been accessible and because ECCO does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

   a) that ECCO retain a qualified consultant acceptable to Plaintiff ("Web Accessibility Consultant") who shall assist it in improving the accessibility of its Website, including third party content and plug-ins, so the goods and services on the Website may be equally accessed and enjoyed by individuals with vision related disabilities;

   b) that ECCO work with the Web Accessibility Consultant to ensure that all employees involved in website and content development be given web accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages;

c) that ECCO work with the Web Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether ECCO's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d) that ECCO work with the Web Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools;

e) that ECCO incorporate all of the Web Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

f) that ECCO work with the Web Accessibility Consultant to create a Web Accessibility Policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems;

g) that ECCO directly link from the Website's homepage, a statement that indicates that ECCO is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the ECCO through the Website;

h) that ECCO accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i) that ECCO provide a notice, prominently and directly linked from the Website's homepage, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

j) that ECCO provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

k) that ECCO train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. ECCO shall have trained no fewer than 3 of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. ECCO shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;

    l) that ECCO modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology;

    m) that Plaintiff, her counsel and its experts monitor the Website for up to two years after the Mutually Agreed Upon Consultant validates the Website is free of accessibility errors/violations to ensure ECCO has adopted and implemented adequate accessibility policies. To this end, Plaintiff, through her counsel and its experts, shall be entitled to consult with the Web Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Website Accessibility Consultant provides ECCO.

10. Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

11. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

12. ECCO attempts to, and indeed does so, participate in the Commonwealth's economic life. To this end, ECCO maintains a brick-and-mortar store at the Pittsburgh Airport, Space AC-13B, Pittsburgh, PA 15231.[3] In addition to this physical location, the Website "offer[s] the widest collection of ECCO products that are in-stock and ready to ship to you within 1-2

---

[3] *See* https://us.shop.ecco.com/store-locator?dwcont=C984530344 (last accessed March 22, 2018).

business days[.]"⁴ *See Gniewkowski v. Lettuce Entertain You*, Order, ECF No. 123 (W.D. Pa Apr. 25, 2017) *clarified by* Order of Court, ECF No. 169 (W.D. Pa. June 22, 2017) (Judge Schwab) (The court exercised personal jurisdiction over an out-of-forum defendant for claims its website is inaccessible to a visually disabled resident of the forum state.); *see also Access Now Inc. v. Otter Products, LLC*, Case No. 1:17-cv-10967-PBS (D.Mass. Dec. 4, 2017) (exercising personal jurisdiction over forum-based plaintiff's website accessibility claims against out-of-forum website operator)

13. ECCO's participation in the Commonwealth hinges, in part, on Pennsylvania consumers accessing its Website and purchasing ECCO's products. Unlike, for example, a winery that cannot sell and ship wine to consumers in certain states, ECCO purposefully avails itself of the benefits and advantages of operating an online business open 24/7 to Pennsylvania residents.

14. As described in additional detail below, Plaintiff was injured when she attempted to access ECCO's Website from his home in Allegheny County, Pennsylvania, but encountered barriers that denied her full and equal access to ECCO's online products and services.

15. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## **PARTIES**

16. Plaintiff Suchenko is and, at all times relevant hereto, has been a resident of Allegheny County, Pennsylvania. Plaintiff Suchenko is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

---

⁴ *See* https://us.shop.ecco.com/customer-support (last accessed April 9, 2018).

17.  Defendant is a New Hampshire corporation with its principle place of business located at 16 Delta Drive, Londonderry, NH 03053. ECCO's Website is place of public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

18.  While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

## ECCO'S ONLINE CONTENT

19.  ECCO's Website allows consumers to search for and purchase various products, directly, and arrange for home delivery.

20.  ECCO's Website also provides consumers with access to important information regarding ECCO's Privacy Policy, Terms & Conditions, and Shipping & Returns Info.

21.  Consumers may use the Website to connect with ECCO on social media, using sites like Facebook and Instagram, and sign up for ECCO's email list, and to locate ECCO's brick-and-mortar locations.

## HARM TO PLAINTIFF

22.  Plaintiff has attempted to use ECCO's Website from her home in Allegheny County, Pennsylvania. Unfortunately, because of ECCO's failure to build its Website in a matter that is compatible with screen reader programs, Plaintiff is unable to understand, and thus is denied the benefit of, much of the content and services she wishes to access or use.

23.     Ms. Suchenko attempted to access the Websites with the same screen reader program she uses to browse the Internet, but found it to be largely unusable due to various accessibility barriers.

24.     As a result of visiting ECCO's Website and from investigations performed on his behalf, Plaintiff is aware the Website includes at least the following digital access barriers blocking her full and equal use:

(a) The Websites do not provide sufficiently descriptive text equivalents for non-text elements. Providing alternative text equivalents allows information to be rendered in a variety of ways by a variety of users. For example, a person who cannot see a picture or image file can have a text alternative read aloud using synthesized speech describing the picture's content.

(b) Links and buttons do not describe their purpose sufficiently. For example, sighted users are likely familiar with the shopping cart icon that appears in the top right corner of many retail websites. However, because screen reader users cannot perceive this common icon visually, public accommodations must accompany the icon with a proper description that, when read aloud by a screen reader, directs consumers to the online checkout process.

(c) Not all headings, labels, and titles describe their topic or purpose. As a result, blind users have significant difficulty understanding what information is contained in web pages and how that information is organized. When headings and labels are clear and descriptive, users can find information they seek more easily, and they can understand the relationships between different pieces of content. Because these features lack sufficient descriptions, Plaintiff cannot similarly perceive the information on Defendant's Websites, or how its content is organized.

25.     These barriers, and others, deny Plaintiff full and equal access to all of the services the Website offers, and now deter her from attempting to use the Website. Still, Plaintiff would

like to, and intends to, attempt to access the Website in the future to research the products and services the Website offers, or to test the Website for compliance with the ADA.

26. If the Website were accessible, *i.e.* if ECCO removed the access barriers described above, Plaintiff could independently research products and services, view ECCO's Terms of Use, Privacy Policy, and Warranty information, and content ECCO's customer service.

27. Though ECCO may have centralized policies regarding the maintenance and operation of its Website, ECCO has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

28. The law requires that ECCO reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

29. All parties have been, and in the absence of an injunction will continue to be, injured by ECCO's failure to provide its online content and services in a manner that is compatible with screen reader technology.

**ECCO'S KNOWLEDGE OF WEBSITE ACCESSIBILITY REQUIREMENTS**

30. ECCO has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

31. Indeed, the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts that it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*,

No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

## THE PARTIES HAVE NO ADMINISTRATIVE REMEDIES TO PURSUE

32. There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

33. While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

34. Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

35. Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether ECCO offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

## SUBSTANTIVE VIOLATION
### (Title III of the ADA, 42 U.S.C. § 12181 *et seq*.)

36. The assertions contained in the previous paragraphs are incorporated by reference.

37. ECCO's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, No. 16-cv-1898, 2017 WL 1437199, at *8-9 (W.D. Pa. Apr. 21, 2017) (Judge Schwab) ("Importantly, however, in both *Ford* and *Peoples*, the alleged discrimination occurred at a

10

location where neither the insurance carrier in *Ford,* nor the credit card company in *Peoples,* had ownership or possession, or exercised control. Conversely, in the instant matter, the alleged discrimination has taken place on property that AmeriServ owns, operates and controls—the AmeriServ Website.").

38. In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent ECCO does not provide Plaintiff with full and equal access to its Website, it has violated the ADA.

39. In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. *Id.; see also* MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

40. Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

41. Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

42. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

43. By failing to provide its Website's content and services in a manner that is compatible with auxiliary aids, ECCO has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a) denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on its Website;

(b) affording individuals with visual disabilities access to its Website that is not equal to, or effective as, that afforded others;

(c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d) denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

44. ECCO has violated Title III by, without limitation, failing to make its Website's services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of the Website, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

45. ECCO has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Website to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

46. Making its online goods, content, and services compatible with screen reader programs does not change the content of ECCO's Website or result in making the Website different, but rather enables individuals with visual disabilities to access the Website ECCO already provides. *See* MIT Statement of Interest, p. 20; Harvard Statement of Interest, p. 20.

47. ECCO's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with visual disabilities.

48. Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

49. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

A. A Declaratory Judgment that at the commencement of this action ECCO was in violation of the specific requirements of Title III of the ADA described above, and the relevant

implementing regulations of the ADA, in that ECCO took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

B.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs ECCO to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that ECCO has adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 9 above.

C.     Payment of costs of suit;

D.     Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191) ("Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987), the fee petition may include costs to monitor Defendant's compliance with the permanent injunction."); and

E.     The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: May 1, 2018                              Respectfully Submitted,

                                                */s/ Benjamin J. Sweet*
                                                Benjamin J. Sweet

14

bsweet@carlsonlynch.com
Kevin W. Tucker
ktucker@carlsonlynch.com
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243

*Counsel for Plaintiff*